# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

MAR 2 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| In the Matter of the Seizure of | ) |
| Up to $52,613.18 in money, funds, and financial instruments deposited or credited to Regions Bank account ending in #3183 held in the name of Ivan Carter d/b/a Carter Corporate Healthcare LLC | ) ) ) ) ) |

Case No. 4:21MJ7049 SPM

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

I, Jordan Willer, being duly sworn depose and say:

I am a Task Force Officer with the Federal Bureau of Investigation, and have reason to believe that there is now certain property namely

Up to $52,613.18 in money, funds, and financial instruments deposited or credited to Regions Bank account ending in #3183 held in the name of Ivan Carter d/b/a Carter Corporate Healthcare LLC

which is

subject to forfeiture under Title 18, United States Code, Sections 981(a)(1) and 982(a)(1) and Title 28, United States Code, Section 2461, and therefore, is subject to seizure under Title 18, United States Code, Sections 981(b) & 982(b) and Title 21, United States Code, Sections 853(e)&(f) concerning violations of Title 18,United States Code, Sections 1343 and 1957.

The funds identified herein are subject to civil forfeiture without regard to their traceability to criminal activity because they are contained in an account into which identical traceable property has been deposited and therefore may be forfeited as fungible property under Title 18, United States Code, Section 984.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

Continued on the attached sheet and made a part hereof.      X   Yes ____ No

**Signature of Affiant**, Jordan Willer

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41

March 2, 2021
**Date and Time Issued**

at  St. Louis, Missouri
**City and State**

Honorable Shirley P. Mensah, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEIZURE WARRANT**

I, Jordan Willer, Task Force Officer, Federal Bureau of Investigation, being duly sworn, depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1.      I, Jordan Willer, am a Task Force Officer with the Federal Bureau of Investigation and have been so deputized for the past 7 months.  I have been a Police Officer for 12 ½ years and a Detective for the last 6 years, assigned to the St. Louis County Police General Assignment Unit and the Intelligence Unit.   I am assigned to the St. Louis, Missouri, field office where I have participated in public corruption and civil rights investigations of various kinds.  I am responsible for, among other assignments, conducting investigations of alleged criminal violations of Title 18, United States Code, Sections 1343, wire fraud, and money laundering, including Sections 1956 and 1957.

2.      I have personally participated in investigations involving the violations of federal law regarding bank fraud, wire fraud and other federal violations such as money laundering that result from such unlawful activity. I have personally participated in the execution of search warrants and seizure warrants, involving the search for various types of evidence and property.  As a deputized task force officer with the Federal Bureau of Investigation, I am authorized to investigate violations of the laws of the United States and to seek forfeiture of property under the authority of the United States.

3.      The Office of the Inspector General for the U.S. Small Business Association, Office of the Inspector General for the Social Security Administration, and the Federal Bureau of Investigation ("FBI") have been investigating a fraud scheme involving Terrell Alexander

("Alexander") and others, known and unknown, and several associated entities as described throughout this affidavit, for violations: of wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), and conspiracy to commit violations of wire fraud, and money laundering (18 U.S.C. §§ 371, 1349, 1956(h)), and identity theft (18 U.S.C. § 1028(a)(7)) (collectively referred to hereinafter as the "Subject Offenses") by and through a scheme to defraud and obtain COVID-19 Economic Injury Disaster Loans ("EIDL") loan proceeds by filing false and fraudulent EIDL loan applications with the Small Business Administration ("SBA"), including through the use of unassigned or fraudulent social security numbers.  Based on the results of this investigation, there is probable cause to believe that, between approximately February 16, 2020, and September 2, 2020, Alexander and his associates fraudulently obtained in excess of $1,400,000 through such scheme, and that Alexander used some of these criminal proceeds to transfer funds between various financial accounts in violation of Title 18, United States Code, Section 1957.  As such, the property described in Attachment A is subject to civil and criminal forfeiture.

4.      On December 22, 2020, United States Magistrate Judge Stephen R. Welby signed numerous seizure warrants for bank accounts associated with the fraud scheme discussed in this affidavit (Case No. 4:20-MJ-8118 to 8134).  In addition, on January 8, 2021, United States Magistrate Judge David D. Noce signed two seizure warrants for bank accounts associated with the fraud scheme discussed in this affidavit (Case No. 4:21-MJ-27 to 28).  This affidavit contains facts related to all previously seized accounts, but only seeks a warrant to seize one account, as set forth in paragraphs 94 through 100.

5.      This affidavit does not contain all the information known to me in regard to the investigation; however, it contains enough information to establish probable cause to authorize the seizure of the property described in Attachment A.

## STATUTORY FRAMEWORK

6.      18 U.S.C. § 1343 (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

7.      18 U.S.C. § 1028(a)(7) (identity theft) criminalizes knowingly using, without lawful authority, a means of identification of another person with intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law.

8.      The proceeds of wire fraud and identity theft are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud or identity theft is subject to civil forfeiture.  In addition, 28 U.S.C. § 2461(c) provides that, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain forfeiture of property "as part of the sentence in the criminal case."   Thus, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud or identity theft is subject to criminal forfeiture.  Finally, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of a violation of identity theft is subject to criminal forfeiture.

3

9.     18 U.S.C. § 1957 (the money laundering spending statute) criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity (including mail and wire fraud) in an amount greater than $10,000.

10.     Property involved in a money laundering offense is subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to civil forfeiture.  In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to criminal forfeiture.  Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime.  These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources.

11.     This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

12.     Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture.  A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred."  28 U.S.C. § 1355(b)(1)(A).  As detailed below, acts or omissions in furtherance of the fraud and money laundering scheme under investigation occurred in the Eastern District of Missouri.  The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21

4

U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action.  21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

13.     Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. §§ 981(b) and 984 for civil forfeiture.  Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

## PROBABLE CAUSE

### The CARES Act and EIDL Loans

14.     The U.S. Small Business Administration ("SBA") is an executive branch agency of the United States that provides support to entrepreneurs and small businesses.  The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

15.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of long-term direct loans to small businesses to provide economic relief to businesses that are experiencing a temporary loss of revenue, through EIDL.

16.     The SBA Office of Disaster Assistance ("ODA") controls the EIDL program and

is headquartered in Washington, DC.  The ODA has authority over all loans issued and disbursed under the EIDL program. EIDL principal proceeds are solely funded by the SBA and are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States. Funds are deposited via Automated Clearing House ("ACH") transfers, which are a type of electronic bank transfer of funds. All payments are processed by the SBA from Denver, Colorado.  If an EIDL loan application was approved, the applicant would be required by SBA to electronically sign loan closing documents.  Loan proceeds would then be transferred to a bank account provided by the applicant.

17.     According to the SBA, the EIDL proceeds could be used by afflicted businesses, which must have existed in an operational condition on February 1, 2020, to cover a wide array of working capital and normal operating expenses such as continuation of health care benefits, rent, utilities, and fixed debt payments that could have been met had the disaster not occurred.  Small businesses owners may apply for these loans.

18.     Unlike other CARES act loans administered by the SBA (i.e. Paycheck Protection Program) EIDLs are not forgivable and are required to be paid back at an interest rate ranging from 2.75-3.75% APR over a 30-year term.  Payments are deferred for one year, interest still accrues and the borrower may make payments if they choose to do so.  Collateral is required for loans over $25,000.00.  The SBA uses a general security agreement designating any business assets as collateral.

19.     Applicants applied for EIDLs online through the SBA's website. SBA relied on self-certifications to verify if an applicant was an eligible entity.  Applicants made these self-certifications under the penalty of perjury.  Applicants were required to state, among other things,

6

their: (a) social security number; (b) gross revenues for the twelve months prior to January 31, 2020; (c) cost of goods sold for the twelve months prior to January 31, 2020; (d) business activity; (e) date business established and (f) number of employees. These figures were used by the SBA to calculate the amount of money the small business was eligible to receive under the EIDL program. If an EIDL loan application was approved, the applicant would be required to sign the loan documents and loan proceeds would be transferred to bank accounts within 5-10 business days.

The Subject EIDL Loans

20.     The United States is investigating Alexander, and others known and unknown, for violations of the Subject Offenses by and through a scheme to defraud and obtain EIDL loan proceeds by filing false and fraudulent EIDL loan applications with the SBA, including through the use of false or fraudulent social security numbers and driver's licenses.

21.     Between approximately July 9, 2020, and November 4, 2020, Alexander and others were associated with the following SBA EIDL loan applications by and through various fraudulent businesses and business bank accounts opened with Regions Bank, Busey Bank and Unify Financial Credit Union.  The transactions related to these loans and bank accounts are actively under investigation.  The below chart shows those EIDL loan transactions, totaling in excess of $1,400,000, that are relevant to this seizure warrant application:

7

| Business | Address | Signor | Claimed Gross Revenue | Alleged # of Employees | Date Loan Signed | Amount of Loan (Actual Payment) |
|---|---|---|---|---|---|---|
| Florentine Investment LLC | 5220 Edgemere Dr., Blackjack, MO 63033 | Shawn Woodhouse | $375,000 | 8[1] | 06/25/20 | $8,000 |
| | | | | | 07/02/20 | $10,000 |
| | | | | | 07/09/20 | $106,900 |
| | | | | | 07/22/20 | $50,400 |
| Direct Management LLC | 1409 Washington Ave., Suite 218, St. Louis, MO 63103 | Terrell Alexander | $759,000 | 1 | 06/27/20 | $1,000 |
| | | | | | 07/08/20 | $149,900 |
| Prime Corporate Investment LLC | 400 Chesterfield Center, Chesterfield, MO 63017 | Danny Walters | $487,907 | 27 | 07/25/20 | $149,900 |
| Black Enterprise Corporate LLC | 2 Cityplace Dr., St. Louis, MO 63141 | Demetrice Black | $625,000 | 9 | 07/24/20 | $149,900 |
| Total CPA LLC | 12400 Olive Blvd., Creve Coeur, MO 63141 | Terrell Alexander | $303,177 | 9 | 08/07/20 | $111,800 |
| Corporate Enterprise Investments LLC | 112 Long and Winding Road, St. Peters, MO 63376 | Cecill Jones | $429,723 | 23 | 08/07/20 | $149,900 |

---

[1] Florentine Investment LLC applied for and received four separate EIDL loans.  On three of the applications (dated 6/25/20, 7/2/2020 and 7/9/2020), Woodhouse listed 8 employees for Florentine Investment LLC.  However, on the 7/22/2020 loan application (for which the entity received a $50,400 loan), Woodhouse listed 57 employees.

| JCC Personnel Management Company LLC | 1716 Woodstream Ct., St. Louis, MO 63138 | Joe Cohen | $339,899 | 37 | 08/10/20 | $121,100 |
|---|---|---|---|---|---|---|
| Top Knotch Marketing LLC | 15542 Chaste, Florissant, MO 63034 | Joe Cohen | $279,999 | 12 | 08/27/20 | $110,000 |
| Jones Corporate Manufacturing LLC | 4120 Delmar Blvd., St. Louis, MO 63108 | Brittaney Jones | $347,239 | 27 | 08/31/20 | $133,900 |
| Qutumn Management LLC | 1939 Wentzville Parkway, Suite 23, Wentzille, MO 63385 | Terrell Alexander | $389,874 | 27 | 07/28/20 | $149,900 |
| Carter Corporate Healthcare LLC | 5220 Edgemere, Black Jack, MO 63033 | Ivan Carter | $172,000 | 9 | 07/04/20 | $63,500 |

22.     The investigation has revealed that Alexander is associated with each of the businesses that received these SBA EIDL loans.  In addition, Alexander either established or was involved with establishing the bank accounts that received the SBA EIDL loan proceeds. Specifically, Alexander was either present during account opening or the known additional parties indicated that they were opening accounts at the direction of Alexander for mutual business purposes.  In addition, a common address (i.e. 5520 Edgemere Drive, Blackjack, MO 63033) listed as the address associated with Alexander and Shawn Woodhouse for the State of Missouri Articles of Organization for Florentine Investments LLC, is also associated with numerous individuals, to include, Danny Walters (Prime Corporate Investment LLC), Cecil Jones (Corporate Enterprise

9

Investments LLC), Brittaney Jones (Jones Corporate Manufacturing LLC), Demetrice Black (Black Enterprise Corporation LLC), Terrell Alexander (Florentine Investments LLC and Direct Management LLC) and Shawn Woodhouse (Florentine Investments LLC).

23.     The below information shows additional links between Alexander and the borrowing entities:

        a.      **Florentine Investment LLC**: Alexander is previously listed as a registered agent and organizer on the State of Missouri Articles of Organization.  Alexander and the current registered agent for this entity, Shawn Woodhouse, both listed an address of 5220 Edgemere Dr., Blackjack, MO 63033.

        b.      **Direct Management LLC**: Alexander is listed as a registered agent for the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Alexander is listed as the 100 percent member owner. Alexander's address is listed as 1409 Washington Ave, St. Louis, MO.

        c.      **Prime Corporate Investment LLC:** Danny Walters is listed as a registered agent for the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Walters is listed as the 100 percent member owner.  Walter's address is listed as 400 Chesterfield Center, Chesterfield, MO.

        d.      **Black Enterprise Corporate LLC:** Demetrice Black is listed as the registered agent for the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Black is listed at the 100 percent member owner. Black's address is listed as 2 Cityplace Drive, St. Louis, MO.

10

e.      **Total CPA LLC**: Alexander is listed as a registered agent on the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Alexander is listed as the 100 percent owner.

f.      **Corporate Enterprise Investments LLC**: Cecill Jones is listed as the registered agent on the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, C. Jones is listed as the 100 percent member owner.  C. Jones' address is listed as 112 Long and Winding Road, St. Peters, MO.

g.      **JCC Personnel Management Company LLC**: Joe Cohen is listed as the registered agent on the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Cohen is listed as the 100 percent member owner.  Cohen's address is listed as 1716 Woodstream Court, St. Louis, MO.

h.      **Top Knotch Marketing LLC**: Joe Cohen is listed as the registered agent on the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, Cohen is listed as 100 percent owner.  Cohen's address is listed as 2424 N Hwy 67, Florissant, MO.

i.      **Jones Corporate Manufacturing LLC**: Brittaney Jones is listed as the registered agent on the State of Missouri Articles of Organization.  In the EIDL Borrower Application Form, B. Jones is listed as the 100 percent member owner.  B. Jones' address is listed as 4120 Delmar Boulevard, St. Louis, MO.

j.      **Qutumn Management LLC:** Terry Anderson is listed as the registered agent on the State of Missouri Articles of Organization with an address of 1332 Peine Lake Drive, Wentzville, MO.  In the EIDL Borrower Application Form, Alexander is listed as the 100 percent member owner with an address of 1939 Wentzville Parkway, Suite 23, Wentzille, MO 63385.

11

        k.     **Carter Corporate Healthcare LLC:** Ivan Carter is listed as the registered agent on the State of Missouri Articles of Organization with an address of 5220 Edgemere Dr, Florissant, MO.  In the EIDL Borrower Application Form, Carter is listed as the 100 percent member owner with an address of 1232 N. Laramie, Chicago, IL 60651.

      24.    Your affiant conducted surveillance of the above listed addresses between November 23, 2020, and November 25, 2020.  As observed by your affiant, none of the listed addresses have any signage identifying the businesses that allegedly use these addresses, or any vehicles parked near the buildings that have any signage regarding these businesses.  Specifically, your affiant determined that:

        a.     **Florentine Investment LLC** – the listed address is a single-family dwelling located in a residential neighborhood with no signage identifying a business;

        b.     **Direct Management LLC** – the listed address is a UPS Store front;

        c.     **Prime Corporate Investments LLC; Black Enterprise Corporate LLC; and Corporate Enterprise Investment LLC –** each listed address is a separate office/commercial building that leases office space; however, in each case, none of these entities were ever documented tenants;

        d.     **Total CPA LLC –** the listed address is a senior living facility;

        e.     **JCC Personnel Management LLC** – the listed address is a single-family dwelling located in a residential neighborhood with no signage identifying a business;

        f.     **Top Knotch Marketing LLC –** the listed address is a single-family dwelling located in a residential neighborhood with no signage identifying a business; and

g.    **Jones Corporate Manufacturing LLC –** the listed address is a single-family dwelling located in a residential neighborhood with no signage identifying a business.

25.    In addition, your affiant reviewed the EIDL loan applications for each entity and noted that the applications contained a social security number that was either unassigned[2] or was assigned to an individual who was not associated with the loan application.  Specifically, the loan applications for Prime Corporate Investments LLC, Black Enterprise Corporate LLC, Total CPA LLC, Corporate Enterprise Investment LLC and Qutumn Management LLC each listed an unassigned social security number on the applications.  In addition, the loan applications for Direct Management LLC and Jones Corporate Manufacturing LLC each listed a social security number on the applications that belong to another individual who is not associated with the loan application.  The loan applications for Florentine Investments LLC (Shawn Woodhouse), JCC Personnel Management LLC and Top Knotch Marketing LLC (Joe Cohen) each listed accurate social security numbers for the borrower listed.

26.    Further investigation revealed that several of the EIDL loan applications were submitted with false or fraudulent identifications.   For example, the Corporate Enterprise Investments LLC loan application includes an invalid Missouri driver's license for "Cecill Jones."[3] In addition, the Jones Corporate Manufacturing LLC loan application includes an invalid Missouri

---

[2] An unassigned social security number is one that has not officially been assigned to an individual by the Social Security Administration.

[3] The picture on the invalid "Cecill Jones" MO DL matches the picture on a true "Cecil Jones" MO DL issued under a different license number.

driver's license for "Brittaney Jones."[4]  Finally, the Qutumn Management LLC loan application submitted by Alexander includes an invalid Missouri driver's license for him.[5]

      27.    Your affiant also notes that several of the borrowing entities for the SBA EIDL loans appear to be professional organizations.  Notwithstanding, none of the individuals purported to be associated with the businesses and/or loan applications hold or have held a professional license in the State of Missouri associated with CPAs, investments, management or marketing.

      28.    On December 15, 2020, your affiant and SSA-OIG Special Agent Joel Ferris interviewed Joe Cohen,[6] who is associated with JCC Personnel Management Company LLC and Top Knotch Marketing LLC.  Cohen stated that he received funds from three separate SBA EIDL loans, including one in his own name (loan #7955958107 in the amount of $29,500), one with JCC Personnel Management Company LLC (loan #6078078204 in the amount of $121,200), and one with Top Knotch Marketing LLC (loan #7049798203 in the amount of $110,100).  Cohen stated that he only completed one of the loan applications himself (i.e. the $29,500 loan), and that the others were completed on Cohen's behalf by Alexander, who Cohen identified as a work associate. Cohen stated that Alexander approached Cohen and offered to complete the additional loan applications for Cohen, and Cohen agreed.  Cohen provided Alexander with his personal

---

[4] The picture on the invalid "Brittaney Jones" MO DL matches the picture on a true "Brittany Jones" MO DL (issued under a different license number).

[5] The individual depicted on the invalid "Terrell Alexander" MO DL is not Alexander.

[6] Cohen has an active license through the Real Estate Commission in St. Louis County as a Broker Associate (Licensee #1999140275).  Cohen has held this license since 11/18/99, and it expires on 6/30/22.  He has a professional affiliation with Reality Unlimited LLC effective 3/16/20.

14

identifiable information and banking information, and Alexander completed the loan applications for JCC Personnel Management Company LLC and Top Knotch Marketing LLC.  Cohen stated that the loan paperwork for these loans contained false information, and further stated that Cohen has no employees, is self-employed and the claimed gross revenue of the loan applications was inaccurate, as it was extremely inflated.  Cohen confirmed receiving the proceeds from these loans. Cohen stated the funds received were being utilized to purchase and rehabilitate properties in the St. Louis region to ultimately rent or sell for profit.  Cohen admitted to sending funds to Direct Management LLC and Florentine Investments LLC, which both are associated with Alexander.[7] Cohen also made several cash withdrawals from his accounts in order to purchase construction materials, pay contractors and to pay Alexander money owed related to their business of rehabilitating houses.[8]

29.     Finally, as further described below, your affiant notes that most of the bank accounts that received the SBA EIDL loan proceeds were opened at Regions Bank after March 25, 2020, and that the loan proceeds were used for daily personal expenses, travel expenses, food and entertainment, retail and online retail purchases, vehicle purchase, large transfers of funds between

---

[7] As further described below, a financial analysis confirmed transfers of funds from Cohen's account (JCC Personnel Management Company account #286879855) to (Direct Management LLC account #266061334) in the amount of $21,000 and from (Top Knotch Marketing LLC account #286879979) to (Florentine Investment LLC account #261999539) in the amount of $32,645.

[8] Your affiant notes that neither JCC Personnel Management Company LLC nor Top Knotch Marketing LLC listed construction or home remodeling as a business activity on the SBA EIDL loan applications.

other listed accounts, online money transfers to family members and large cash withdrawals. These expenditures conflict with the terms of the respective SBA EIDL loan agreements stating that the loan proceeds are designated for working capital and normal business operating expenses.

30.     Based on the foregoing, your affiant respectfully submits that Alexander and others have perpetrated a fraud scheme wherein various entities applied for and received SBA EIDL loan proceeds based on false and fraudulent representations, and in some cases, through the use of unassigned or fraudulent social security numbers and/or Missouri driver's licenses.

## THE FINANCIAL ACCOUNTS

31.     Your affiant worked with other investigators to identify and trace the funds obtained by Alexander and others as proceeds of the aforementioned fraud scheme.   The investigative team has conducted a review of financial records associated with the investigation, including bank statements, bank deposit records, checks, cashier's checks, and any other financial records obtained during the course of the investigation, in order to trace funds related to the illegal activity and determine the origin of funds.

32.     As stated above, Alexander either established or was involved with establishing the bank accounts that received the above SBA EIDL loan proceeds.  Based on this investigation, your affiant discovered that Alexander, or known associates of Alexander, controlled at least sixteen bank accounts during the period of the fraudulent scheme that received fraudulent EIDL loan proceeds from the Small Business Administration.

33.     On December 22, 2020, United States Magistrate Judge Stephen R. Welby, signed seizure warrants for funds from the following bank accounts (Case No. 4:20-MJ-8118 to 8134):

16

| Account | Description | Account Information | Balance[9] |
|---|---|---|---|
| Account #1 | Regions Bank account ending in #9539 held in the name of Florentine Investment LLC | Opened 4/2019<br>Signor: Shawn Woodhouse | $1,045.01 |
| Busey Account | Busey Bank account ending in #2239 held in the name of Florentine Investments LLC | Opened 11/2020<br>Signor: Terrell Alexander | $22,000 |
| Account #2 | Regions Bank account ending in #2315 held in the name of Shawn Woodhouse | Opened 1/2020<br>Signor: Shawn Woodhouse | $1,803.19 |
| Account #3 | Regions Bank account ending in #1334 held in the name of Direct Management LLC | Opened 8/2013<br>Signor: Terrell Alexander | $68,319.07 |
| Account #4 | Regions Bank account ending in #7809 held in the name of Direct Management LLC | Opened 8/2013<br>Signor: Terrell Alexander | $67,864.48 |
| Account #5 | Regions Bank account ending in #3014 held in the name of Prime Corporate Investment LLC | Opened 3/2020<br>Signor: Danny Walters | $3,467.18 |
| Account #6 | Regions Bank account ending in #3294 held in the name of Prime Corporate Investment LLC | Opened 3/2020<br>Signor: Danny Walters | $25,775.33 |
| Account #7 | Regions Bank account ending in #3286 held in the name of Black Enterprise Corporation LLC | Opened 3/2020<br>Signor: Demetrice Black | $19,533.29 |
| Account #8 | Regions Bank account ending in #3243 held in the name of Black Enterprise Corporation LLC | Opened 3/2020<br>Signor: Demetrice Black | $2,970.63 |
| Account #9 | Regions Bank account ending in #9987 held in the name of Total CPA LLC | Opened 8/2020<br>Signor: Terrell Alexander | $12,286.00 |
| Account #10 | Regions Bank account ending in #9995 held in the name of Total CPA LLC | Opened 8/2020<br>Signor: Terrell Alexander | $100,486.00 |

[9] With the exception of Account #20, the balances represent the amount seized pursuant to federal seizure warrants served on or about 12/28/20 and 1/8/21.

| Account #11 | Regions Bank account ending in #6053 held in the name of Corporate Enterprise Investments LLC | Opened 5/2020<br>Signor: Cecil Jones | $6,585.94 |
| --- | --- | --- | --- |
| Account #12 | Regions Bank account ending in #6045 held in the name of Corporate Enterprise Investments LLC | Opened 5/2020<br>Signors Cecil Jones | $131,645.95 |
| Account #13 | Regions Bank account ending in #9855 held in the name of JCC Personnel Management Company | Opened 7/2020<br>Signor: Joe Cohen | $56,234.68 |
| Account #14 | Regions Bank account ending in #9979 held in the name of Top Knotch Marketing LLC | Opened 7/2020<br>Signor: Joe Cohen | $34,884.22 |
| Account #15 | Regions Bank account ending in #3227 held in the name of Jones Corporate Manufacturing LLC | Opened 6/2020<br>Signor: Brittaney Jones | $707.11 |
| Account #16 | Regions Bank account ending in #3359 held in the name of Jones Corporate Manufacturing LLC | Opened 6/2020<br>Signor: Brittaney Jones | $52,424.74 |
| Account #17 | Unify Financial Credit Union membership ending #0285 held in the name of Qutumn Management LLC | Opened 1/2017<br>Signor: Terrell Alexander | $149,900 |
| Account #18 | Regions Bank account ending in #8583 held in the name of Florentine Investment LLC | Opened 7/2019<br>Signor: Terrell Alexander | $5,438.17 |
| Account #19 | Regions Bank account ending in #8621 held in the name of Florentine Investment LLC | Opened 7/2019<br>Signor: Terrell Alexander | $13,072.34 |
| Account #20 | Regions Bank account ending in #3183 held in the name of Ivan Carter d/b/a Carter Corporate Healthcare LLC | Opened 9/2020<br>Signor: Ivan Carter | $52,613.18 |

**The Florentine Investment LLC loan Proceeds – Account #1 (Regions account ending in #9539), Busey Account (Busey Bank account ending in #2239), and Account #2 (Regions Bank account ending in #2315)**

34.     As described below, the proceeds from the various fraudulent EIDL loans to

Florentine Investments LLC were deposited into Account #1 and Account #2.

18

35.     Account #1 was opened in April 2019.  Shawn Woodhouse is the original signor on the account documents.  Between May 30, 2020, and October 30, 2020, the account had limited activity.  On June 6, 2020, and on July 13, 2020, there were ACH transfers from "SBAD Treas 310" into Account #1 in the amounts of $8,000 and $106,900, respectively.  These funds are the proceeds from the Florentine Investments LLC EIDL fraudulent loans on 6/25/2020 and 7/9/2020.  On July 29, 2020, there was a transfer to Account #4 in the amount of $50,000.  On November 2, 2020, a $22,000 cashier's check issued from Account #1 was deposited into Busey Bank account ending in #2239 held in the name of Florentine Investments LLC (the "Busey Account"), which account was opened by Alexander on 11/4/2020).  The remaining activity in Account #1 does not contain any transactions typically indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

36.     Account #2 was opened in January 2020.  Shawn Woodhouse is the original signor on the account documents.  Between June 25, 2020, and October 8, 2020, the account had limited activity.  On July 7, 2020, and on July 24, 2020, there were ACH transfers from "SBAD Treas 310" into Account #2 in the amounts of $10,000 and $50,400, respectively.  These funds are the proceeds from the Shawn Woodhouse EIDL fraudulent loan dated 7/2/2020.  On July 29, 2020, there was a transfer to account #4 in the amount of $50,000.  The remaining activity in Account #2 does not contain any transactions typically indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

37.     The account activity in both Account #1 and Account #2 consisted of $60.00 in credits and $150,419.23 in debits.  These numbers do not support the purported $375,000 in gross

revenues, the $162,000 in cost of goods sold or the 8 employees as represented on the EIDL loan applications, and further provide probable cause that those representations are false and fraudulent.

38.     As set forth above, as of the date of this affidavit, the balance in Account #1 is $1,052.01, and the balance in Account #2 is $1,966.64.

39.     In sum, I believe there is probable cause to seize all of the funds in Account #1 and Account #2, and up to $22,000 in the Busey Account, because the funds are subject to forfeiture as proceeds of wire fraud.

**The Direct Management LLC loan proceeds - Account #3 (Regions account ending in #1334) and Account #4 (Regions Bank account ending in #7809)**

40.     As described below, the proceeds from the two fraudulent EIDL loans to Direct Management LLC were deposited into Account #3 and Account #4.

41.     Account #3 was opened in September 2018.  Terrell Alexander is the original signor on the account documents.  On June 30, 2020, and on July 9, 2020, there were ACH transfers from "SBAD Treas 310" into Account #3 in the amounts of $1,000 and $149,900, respectively.  These funds are proceeds from the Direct Management, LLC fraudulent loans.  As discussed above, the application for these loans included a fraudulent social security number.

42.     Account #4 was opened in July 2018.  Terrell Alexander is the original signor on the account documents.  Between June 8, 2020 and July 10, 2020 there were five fund transfers totaling $21,566 transfer from Account #3 into Account #4, which funds represent a portion of the proceeds of the Direct Management fraudulent loans.  In addition, on July 29, 2020, there was a $50,000 from Account #1 into Account #4, which funds represent a portion of the proceeds of the Florentine Investment LLC fraudulent loans.  Finally, on July 29, 2020, there was another $50,000

transfer from Account #2 into Account #4, which funds represent a portion of the proceeds of the Florentine Investment LLC fraudulent loans.

43.     Between June 8, 2020, and October 15, 2020, there were several other transfers to and from Account #3 and Account #4 and other accounts in this investigation as further summarized in Attachment B.  Each of these transfers involved criminal proceeds of fraudulent SBA EIDL loans.

44.     As set forth above, as of the date of this affidavit, the balance in Account #3 is $68,319.07 and the balance in Account #4 is $67,938.47.

45.     In sum, I believe there is probable cause to seize all of the funds in Account #3 and Account #4 because the funds are subject to forfeiture as proceeds of wire fraud and identity theft. In addition, there is probable cause to seize all of the funds in Account #4 because the funds are involved in a money laundering violation.

**The Prime Corporate Investment LLC loan proceeds - Account #5 (Regions account ending in #3014) and Account #6 (Regions account ending in #3294)**

46.     As described below, the proceeds from the fraudulent EIDL loan to Prime Corporate Investment LLC were deposited into Account #5 and Account #6.

47.     Account #5 was opened in March 2020. Danny Walters is the original signor on the account documents.  On July 28, 2020, an ACH transfer totaling $149,900 from "Sbad Treas 310" was deposited into the account, which represents the proceeds from the Prime Corporate Investment LLC EIDL fraudulent loan dated 7/25/2020.  The loan application dated July 25, 2020, listed gross revenues of $487,907; however, during the time period of March 30, 2020, through July 13, 2020, the total inflows into this account only totaled $8,250.  These inflows above are not

from customer receipts and account activity does not contain transactions typically indicative of an operating business, such as expenditures for payroll, utilities, or rent.

48.     Account #6 was opened in March 2020. Danny Walters is the original signor on the account.  Between March 30, 2020, and October 30, 2020, there was minimal account activity, and that activity does not contain any transactions indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, or rent.  Between June 8, 2020 and September 21, 2020, there were two transfers of criminal proceeds from fraudulent SBA EIDL loans into Account #6 – specifically, $25,000 from Account #5 on July 29, 2020, and $10,000 from Account #7 on August 3, 2020 (as discussed below, these are proceeds of the fraudulent Black Enterprise Corporation LLC loan).  In addition, on August 19, 2020, there was a $10,000 transfer from Account #6 into another account at Regions Bank.  See Attachment B.

49.     As set forth above, as of the date of this affidavit, the balance in Account #5 is $3,474.18 and the balance in Account #6 is $25,782.33.

50.     In sum, I believe that there is probable cause to seize all of the funds in Account #5 and Account #6 because the funds are subject to forfeiture as proceeds of wire fraud.  In addition, there is probable cause to seize all of the funds in Account #6 because the funds are involved in a money laundering violation.

**The Black Enterprise Corporation LLC loan proceeds - Account #7 (Regions account ending in #3286) and Account #8 (Regions Bank account ending in #3243)**

51.     As described below, the proceeds from the fraudulent EIDL loan to Black Enterprise Corporation LLC were deposited into Account #7 and Account #8.

52.     Account #7 and Account #8 were both opened in March 2020.  Demetrice Black is the original signor on the account documents.

53.     On July 28, 2020, there was an ACH transfer in the amount of $149,900 into Account #7 from "SBAD Treas 310," which funds are proceeds of the EIDL loan to Black Enterprise Corporate LLC dated 7/24/2020.  According to the loan application dated July 24, 2020, the company listed Gross Revenues of $625,000. During the time period March 25, 2020, through July 23, 2020, the inflows into Account #7 only totaled $68,535.92; these inflows do not appear to be from customer receipts and the account activity does not contain transactions typically indicative of an operating business, such as expenditures for payroll, utilities, or rent.

54.     On April 27, 2020 and July 29, 2020, there were two fund transfers of criminal proceeds from Account #7 into Account #8 of $4,500 and $27,000, respectively. Between April 27, 2020, and September 21, 2020, additional transfers to and from Account #7 and Account #8 and other accounts in this investigation are summarized in Attachment B.

55.     As set forth above, as of the date of this affidavit, the balance in Account #7 is $19,540.29 and the balance in Account #8 is $2,977.63.

56.     In sum, I believe there is probable cause to seize all of the funds in Account #7 and in Account #8 because the funds are subject to forfeiture as proceeds of wire fraud.  In addition, there is probable cause to seize all of the funds in Account #8 because the funds are involved in a money laundering violation.

**The Total CPA LLC loan proceeds - Account #9 (Regions account ending in #9987) and Account #10 (Regions account ending in #9995)**

57.     As described below, the proceeds from the fraudulent EIDL loan to Total CPA LLC were deposited into Account #9 and Account #10.

58.     Account # 9 and Account #10 were opened in August 2020.  Terrell Alexander is the original signor on the account documents.  There was limited activity in both accounts.

23

59.     On August 11, 2020, there was an ACH transfer from "SBAD Treas 310" into Account #9 in the amount of $111,800, which funds are proceeds of the EIDL loan to Total CPA LLC dated 8/7/2020.  According to the loan application dated August 7, 2020, the company listed Gross Revenues of $303,177.  Prior to the deposit of the EIDL loan proceeds, inflows consisted of the opening cash deposits and did not contain credits from customer receipts and debit transactions are not indicative of an operating business, such as expenditures for payroll, utilities, rent, or supplies.

60.     On August 12, 2020, there was a $100,000 transfer of criminal proceeds from Account #9 into Account #10.  These funds are a portion of the proceeds from the fraudulent EIDL loan to Total CPA LLC and are summarized in Attachment B.

61.     As set forth above, as of the date of this affidavit, the balance in Account #9 is $12,293.00 and the balance in Account #10 is $100,493.00.

62.     In sum, I believe there is probable cause to seize all of the funds in Account #9 and in Account #10 because the funds are subject to forfeiture as proceeds of wire fraud.  In addition, there is probable cause to seize all of the funds in Account #10 because the funds are involved in a money laundering violation.

**The Corporate Enterprise Investments LLC loan proceeds – Account #11 (Regions account ending in #6053) and Account #12 (Regions account ending in #6045)**

63.     As described below, the proceeds from the fraudulent EIDL loan to Corporate Enterprise Investments LLC were deposited into Account #11 and Account #12.

64.     Account #11 was opened in May 2020.  Cecil Jones is the original signor on the account documents.  On August 11, 2020, there was a $149,900 ACH transfer from "SBAD Treas 310" into Account #11, which are the proceeds from the Corporate Enterprise Investments LLC

24

EIDL fraudulent loan dated 8/7/2020.  The loan application dated July 25, 2020, listed gross revenues of $429,723.  During the time period of May 5, 2020, through August 11, 2020, inflows into Account #11 totaled $37,514.25, and these inflows are not from customer receipts and account activity does not contain transactions typically indicative of an operating business, such as expenditures for payroll, utilities, or rent.

65.     Account #12 was opened in May 2020. Cecil Jones is the original signor on the account documents.  Between May 5, 2020, and October 30, 2020, there was minimal account activity and does not contain any transactions indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, or rent.  Between August 11, 2020, and October 2, 2020, there were four transfers netting $7,033.64 from Account #11 into Account #12, which funds represent a portion of the proceeds of the Corporate Enterprise Investments LLC fraudulent loan. In addition, on September 8, 2020, there was a $52,000 transfer from Account #16 into Account #12, which funds represent a portion of the proceeds of the Jones Corporate Manufacturing LLC fraudulent loan.  Other transfers between these accounts are summarized in Attachment B.

66.     As set forth above, as of the date of this affidavit, the balance in Account #11 is $5,846.89 and the balance in Account #12 is $131,652.95.

67.     In sum, I believe there is probable cause to seize all of the funds in Account #11 and in Account #12 because the funds are subject to forfeiture as proceeds of wire fraud.  In addition, there is probable cause to seize all of the funds in Account #12 because the funds are involved in a money laundering violation.

**The JCC Personnel Management Company LLC loan proceeds - Account #13 (Regions account ending in #9855)**

68.     As described below, the proceeds from the fraudulent EIDL loan to JCC Personnel Management Company LLC were deposited into Account #13.

69.     Account #13 was opened on in July 2020.  Joe Cohen is the original signor on the account documents.  Between July 30, 2020, and October 27, 2020 the account had limited activity.

70.     On August 12, 2020, there was an ACH transfer from "SBAD Treas 310" in the amount of $121,100, which represents the proceeds from the JCC Personnel Management Company LLC EIDL fraudulent loan dated 8/10/2020.  According to the loan application dated July 30, 2020, the company listed Gross Revenues of $339,899.  During the time period of July 31, 2020, through August 12, 2020, inflows into Account #13 consisted of a $100 cash deposit to open the account and the above mentioned EIDL proceeds.  Transaction in the account are not indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

71.     As set forth above, as of the date of this affidavit, the balance in Account #13 is $56,467.41.

72.     In sum, I believe there is probable cause to seize all of the funds in Account #13 because the funds are subject to forfeiture as proceeds of wire fraud.

**The Top Knotch Marketing LLC loan proceeds - Account #14 (Regions Bank account ending in #9979)**

73.     As described below, the proceeds from the fraudulent EIDL loan to Top Knotch Marketing LLC were deposited into Account #14.

74.     Account #14 was opened on August 6, 2020, Joe Cohen is the original signor on the account documents.

26

75.     On August 31, 2020, there was an ACH transfer from "SBAD Treas 310" into Account #14 in the amount of $110,000, which represents the proceeds from the Top Knotch Marketing LLC EIDL fraudulent loan dated August 27, 2020.  According to the loan application dated August 7, 2020, the company listed Gross Revenues of $279,999.  During the time period of August 7, 2020, through August 31, 2020, inflows into Account #14 consisted of a $100 cash deposit to open the account and the above mentioned EIDL proceeds, and did not contain transactions indicative of an operating business, such as customer receipts expenditures for payroll, utilities, rent, or supplies.

76.     As set forth above, as of the date of this affidavit, the balance in Account #14 is $41,339.37.

77.     In sum, I believe there is probable cause to seize all of the funds in Account #14 because the funds are subject to forfeiture as proceeds of wire fraud.

**The Jones Corporate Manufacturing LLC loan proceeds – Account #15 (Regions account ending in #3227) and Account #16 (Regions Bank account ending in #3359)**

78.     As described below, the proceeds from the fraudulent EIDL loan to Jones Corporate Manufacturing LLC were deposited into Account #15 and Account #16.

79.     Account #15 and Account #16 was opened in June 2020. Brittaney Jones is the original signor on the account documents.

80.     On September 2, 2020, there was an ACH transfer in the amount of $133,900 from "SBAD Treas 310" into Account #16, which represent the proceeds from the Jones Corporate Manufacturing LLC fraudulent EIDL loan dated 8/31/2020.  As described above, the loan application was submitted using a false or fraudulent social security number.  According to the loan application dated August 13, 2020, the company listed Gross Revenues of $347,239.  During

the time period of June 30, 2020, through August 31, 2020, the inflows into Account #16 only totaled $3,500.  Activity in Account #15 and Account #16 does not contain any transactions typically indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

81.     On September 8, 2020, Account #15 received a $3,000 funds transfer from Account #16.  These funds are proceeds from the EIDL fraudulent loan received by Jones Corporate Manufacturing LLC.

82.     Between July 7, 2020, and September 8, 2020, transfers to and from Account #15 and Account #16 and other accounts in this investigation are summarized in Attachment B.

83.     As set forth above, as of the date of this affidavit, the balance in Account #15 is $714.11 and the balance in Account #16 is $53,152.81.

84.     In sum, I believe there is probable cause to seize all of the funds in Account #15 and in Account #16 because the funds are subject to forfeiture as proceeds of wire fraud and identity theft.

**The Qutumn Management LLC loan proceeds – Account #17 (Unify Financial Credit Union membership ending #0285)**

85.     As described below, the proceeds from the fraudulent EIDL loan to Qutumn Management LLC were deposited into Account #17.

86.     Account #17 was opened in January 2017.  Terrell Alexander is the original signor on the account documents.

87.     On July 29, 2020, there was an ACH transfer in the amount of $149,900 from "SBAD Treas 310" into Account #17, which represent the proceeds from the Qutumn Management LLC fraudulent EIDL loan.  According to the loan application dated July 28, 2020, the company

listed Gross Revenues of $389,874 and Cost of Goods Sold of $39,543.  However, the account had no activity and does not contain any transactions typically indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

88.     As set forth above, the balance in Account #17 was $149,900, and the funds were being held by Unify Financial Credit Union in a general ledger / suspense account.  Your affiant discovered that Unify Financial Credit Union subsequently returned the funds to SBAD TREAS.  As such, the Government is not seeking a warrant to seize these funds.

**Florentine Investment LLC - Account #18 (Regions account ending in #8583) and Account #19 (Regions account ending in #8621)**

89.     Account #18 and Account #19 were opened in July 2019.  Terrell Alexander is the original signor on the account documents.  There was limited activity in both accounts.

90.     On August 20, 2020, there was a transfer from Account #3 to Account #18 in the amount of $20,000.  These funds were proceeds from the JCC Personnel Management Company EIDL fraudulent loan.

91.     On July 10, 2020, there was a transfer from Account #3 to Account #19 in the amount of $25,000.  These funds were proceeds from the Direct Management LLC EIDL fraudulent loan. On September 1, 2020, there was a transfer from Account #14 to Account #19 in the amount of $32,645.  These funds were proceeds from the Top Knotch Marketing LLC EIDL fraudulent loan.

92.     The activity in both accounts do not contain any transactions indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies.

93.     In sum, I believe there is probable cause to seize funds up to $20,000 in Account #18 and funds up to $57,645 in Account #19 because the funds are subject to forfeiture as proceeds of wire fraud and identity theft and because the funds are involved in a money laundering violation.

**Ivan Carter d/b/a Carter Corporate Healthcare LLC – Account #20 (Regions account ending in #3183**

94.     Account #20 was opened in September 2020.  Ivan Carter is the original signor on the account documents.  Carter was accompanied by Terrell Alexander when this account was opened.

95.     As shown above, an SBA EIDL loan application dated 07/02/2020 in the name of Ivan Carter, lists 9 employees and a gross revenue of $172,000 for 12 months prior to the disaster. A search of State of Missouri employment records revealed no data on file relative to Carter or the business, Carter Corporate Healthcare LLC.  The loan was executed on 07/04/2020, while Carter Corporate Healthcare LLC was established on 07/19/2020.

96.     On July 7, 2020, there was an ACH transfer from "SBAD Treasury 310" in the amount of $63,400 into account 65715-23 held at Chicago Municipal Employees Credit Union. Ivan Carter is the sole owner of the account.  These funds were proceeds from the Ivan Carter EIDL fraudulent loan.

97.     On July 7, 2020, there was a $30,000 transfer from account 65715-23 to sub-account 65715-01.  These funds represent a portion of the fraudulent proceeds from the Ivan Carter EIDL loan.

98.     On July 21, 2020, there were two withdrawals in the amount of $33,939.41 and $29,500 from accounts 65715-23 and 65715-01, respectively.   These withdrawals funded the

purchase of Cashier's Check #119451, which was subsequently deposited into Account #20 on September 3, 2020.

99.     The activity in Account #20 does not contain any transactions indicative of an operating business, such as customer receipts, expenditures for payroll, utilities, rent, or supplies. It should be noted that, on September 15, 2020, there was a $4,000 transfer from Account #20 to Account #3 (held in the name of Direct Management LLC).

100.    In sum, I believe there is probable cause to seize funds up to $52,613.18 in Account #20 because the funds are subject to forfeiture as proceeds of wire fraud and because the funds are involved in a money laundering violation.

## CONCLUSION

101.    Based on the information above, there is probable cause to believe that funds up to $52,613.18 in Account #20, as set forth in Attachment A, are subject to criminal and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), as representing or deriving from proceeds of fraudulent SBA EIDL loan fraud scheme in violation of 18 U.S.C. 1343; and pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), as being involved in a money laundering transaction in violation of 18 U.S.C. § 1957.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Jordan Willer
Task Force Officer
Federal Bureau of Investigation

31

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this ___2nd___ day of March, 2021.

The Honorable Shirley P. Mensah
United States Magistrate Judge
Eastern District of Missouri

32

## ATTACHMENT A

## LIST OF PROPERTY TO BE SEIZED

| | |
|---|---|
| Account #20 | Up to $52,613.18 in money, funds, and financial instruments deposited or credited to Regions Bank account ending in #3183 held in the name of Ivan Carter d/b/a Carter Corporate Healthcare LLC |

1

## ATTACHMENT B

### Summary of Transfers between accounts

| Sum of Amount | (From)/To | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| (To)/From | Acct #1 | Acct #2 | Acct #3 | Acct #4 | Acct #5 | Acct #6 | Acct #7 | Acct #8 |
| Acct #1 | | | | (50,000) | | | | |
| Acct #2 | | | | (50,000) | | | | |
| Acct #3 | | | | (15,000) | 10,500 | 500 | 15,000 | |
| Acct #4 | 50,000 | 50,000 | 21,566 | | | | | |
| Acct #5 | | | (500) | | | (25,000) | 9,000 | 1,000 |
| Acct #6 | | | | | 25,000 | | 10,000 | |
| Acct #7 | | | (6,000) | | (10,000) | | | (31,500) |
| Acct #8 | | | | | | | 31,500 | |
| Acct #9 | | | | | | | | |
| Acct #10 | | | | | | | | |
| Acct #11 | | | (32,000) | 10,000 | (10,000) | | 10,000 | |
| Acct #12 | | | (1,500) | (2,913) | | | (10,000) | |
| Acct #13 | | | (21,000) | | | | | |
| Acct #14 | | | | | | | | |
| Acct #15 | | | | | | | - | |
| Acct #16 | | | (22,000) | | | | | |
| Acct #18 | | | 10,000 | | | (10,000) | (11,500) | |
| Acct #19 | | | 25,000 | | | | | |
| Acct #20 | | | | | | | | |
| 277922905 | | | | | | | 10,000 | |
| Grand Total | 50,000 | 50,000 | (26,434) | (107,913) | 15,500 | (34,500) | 64,000 | (30,500) |

1

**Sum of Amount**

| (To)/From | Acct #9 | Acct #10 | Acct #11 | Acct #12 | Acct #13 | Acct #14 | Acct #15 | Acct #16 |
|---|---|---|---|---|---|---|---|---|
| Acct #1 | | | | | | | | |
| Acct #2 | | | | | | | | |
| Acct #3 | | | 33,500 | 1,500 | 21,000 | | | 22,000 |
| Acct #4 | | | | 2,913 | | | | |
| Acct #5 | | | 10,000 | | | | | |
| Acct #6 | | | | | | | | |
| Acct #7 | | | (10,000) | - | | | - | |
| Acct #8 | | | | | | | | |
| Acct #9 | | (100,000) | | | | | | |
| Acct #10 | 100,000 | | | | | | | |
| Acct #11 | | | | (83,000) | | | | |
| Acct #12 | | | 75,966 | | | | | 52,000 |
| Acct #13 | | | | | | | | |
| Acct #14 | | | | | | | | |
| Acct #15 | | | | | | | | 3,000 |
| Acct #16 | | | | (52,000) | | | (3,000) | |
| Acct #18 | | | | | | | (10,000) | |
| Acct #19 | | | | | | 32,645 | | |
| Acct #20 | | | | | | | | |
| 277922905 | | | | | | | | |
| **Grand Total** | **100,000** | **(100,000)** | **109,466** | **(130,587)** | **21,000** | **32,645** | **(13,000)** | **77,000** |

2

**Sum of Amount**

| (To)/From | Acct #18 | Acct #19 | Acct #20 | 2905 | 6238 | 7994 | 8036 | 8052 | 18067735 |
|---|---|---|---|---|---|---|---|---|---|
| Acct #1 | | | | | | | | | |
| Acct #2 | | | | | | | | | |
| Acct #3 | | | 4,000 | | | | | | |
| Acct #4 | | | | | | | | | |
| Acct #5 | | | | | 500 | (1,000) | | (500) | |
| Acct #6 | 10,000 | | | | | | | | |
| Acct #7 | 11,500 | | | (10,000) | | | | | |
| Acct #8 | | | | | | | | | |
| Acct #9 | | | | | | | | | |
| Acct #10 | | | | | | | | | |
| Acct #11 | | | | | | | | | |
| Acct #12 | | | | | | | (1,000) | | |
| Acct #13 | | | | | | | | | |
| Acct #14 | | (32,645) | | | | | | | |
| Acct #15 | 10,000 | | | | | | | | |
| Acct #16 | | | | | | | | | |
| Acct #18 | | (5,100) | | | | | | | |
| Acct #19 | 2,100 | | | | | | | | |
| Acct #20 | | | | | | | | | 63,439 |
| 277922905 | | | | | | | | | |
| **Grand Total** | **33,600** | **(37,745)** | **4,000** | **(10,000)** | **500** | **(1,000)** | **(1,000)** | **(500)** | **63,439** |

3

| (To)/From | PENFED-8047407021 | WT ELONZE MCKINNE | WT SEVENA SAMUEL |
|---|---|---|---|
| Acct #1 | | | |
| Acct #2 | | | |
| Acct #3 | | | |
| Acct #4 | | 40,000 | (2,000) |
| Acct #5 | | | |
| Acct #6 | | | |
| Acct #7 | | | |
| Acct #8 | | | |
| Acct #9 | | | |
| Acct #10 | | | |
| Acct #11 | | | |
| Acct #12 | | | |
| Acct #13 | | | |
| Acct #14 | | | |
| Acct #15 | | | |
| Acct #16 | | | |
| Acct #18 | | | |
| Acct #19 | 25,000 | | |
| Acct #20 | | | |
| 277922905 | | | |
| Grand Total | 25,000 | 40,000 | (2,000) |

4